THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL SANTOS ALTIERI, Defendant and Appellant.

No. 12396. Argued July 1, 1947.—Decided July 18, 1947.

*B. Quiñones Elías* and *José Rafael Arcelay* for appellant. *Luis Negrón Fernández, Attorney General,* and *Joaquín Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

612

Mr. Justice Marrero delivered the opinion of the Court.

An information was filed, in the District Court of Aguadilla, against Miguel Santos Altieri for a violation of Act No. 228 of 1942 (Laws of 1942, p. 1268), as amended by Act No. 493 of 1946 (Laws of 1946, p. 1474), in connection with Administrative Order No. 8, promulgated by the General Supplies Administrator on September 8, 1942, as amended and enlarged, such violation consisting in that the defendant, on or about July 31, 1946, and in the town of Rincón, "sold to Gregorio Rodríguez Vargas 2 pounds of rice at 17 cents per pound, *and upon being requested to issue an invoice of such sale, he refused to do so, selling said 2 pounds of rice without an invoice, . . .*" (Italics ours.)

On the day set for trial the defendant filed a demurrer which was overruled, and after hearing the evidence introduced by the Government and by the defendant himself, the lower court found him guilty of the offense charged against him and sentenced him to a term of one year in jail and to pay a fine of $1,000, plus costs. Feeling aggrieved by that decision, the defendant has appealed to this Court.

It may be seen that the gist of the information is that Santos Altieri sold to Gregorio Rodríguez Vargas 2 pounds of rice, and that upon being requested to issue an invoice of such sale, he refused to do so. Bearing this in mind, we will proceed with our opinion.

In the brief filed, the defendant assigns eight errors, which we will discuss in the same order in which they have been stated.

The appellant first contends that the lower court erred in finding him guilty of violating Orders Nos. 8 and 84 issued by the General Supplies Administrator, without it having been proved by The People that said orders had been published in a newspaper of general circulation in the Island of Puerto Rico. This contention lacks merit, since it has been held that "in a prosecution for a violation of a regulation which, once approved by a government officer has

the force of law, the prosecuting attorney is not bound to introduce evidence as to its publication. The defendant who challenges its validity because it has not been published according to law has the burden of proving its nullity." *People* v. *Sanjurjo*, 58 P.R.R. 651, 654.

■ The defendant next urges that said court erred in finding him guilty, since the evidence introduced was not sufficient to support the judgment. Undoubtedly, from the evidence introduced by the parties a conflict arose; but the same was resolved by the lower court, and there is nothing in the record to convince us that in so doing, said court committed manifest error or acted under the influence of passion, prejudice or partiality. See *Machuca* v. *Water Resources Authority*, 66 P.R.R. 174; and *Rivera* v. *López*, 66 P.R.R. 201.

■ The appellant further contends that the lower court erred in finding him guilty, for, not knowing how to read or write, he was unable to make an invoice of the sale. This contention is not correct either. Administrative Order No. 8 (The People's exhibit A), issued by the General Supplies Administrator on September 8, 1942, definitely prohibits "every merchant, *whether* an importer, *wholesaler,* or retailer, . . . (1) *From selling without invoice."* According to the enlargement of said order by Order No. 84 of July 30, 1946 "the prohibition against selling without an invoice *binds every merchant* or manufacturer, *whether a wholesaler,* representative, agent or *retailer, to give a clear and definite invoice* in which there should be stated the thing sold, the price per unit, and the total value" as well as *"to give an invoice or ticket to the consumer when the latter so requires,* likewise setting forth the quantity sold, the price per unit, and the total value, without failing to clearly specify in connection with such total value the weight or unit and the value of each unit . . ." (Italics ours.) Said Order No. 8, as the same has been enlarged, does not at all say that it is applicable only to those merchants, wholesalers or retailers, who might know how to read and write. It does not make

any exception whatsoever on this point, and the fact that the defendant Santos Altieri was a retailer on a small scale, who did not know how to write or who only knew how to read or write some figures, does not release him from the obligation to comply with said provisions. *Ubi lex non distinguit, nec nos distinguere debemus.* If it were held that the provisions of orders like the one under discussion can only by applied to merchants who know how to read and write, the same would easily becomes a means of defeating justice.

■ The question raised in the fourth assignment has heretofore been determined adversely to the appellant in several decisions of this Court. For instance, in *People* v. *Arce,* No. 11733, decided by this Court on April 23, 1947, we stated that "undoubtedly, there are certain powers which the Legislature may delegate to a particular officer or administrative board"; that "the Act clearly and expressly authorizes the General Supplies Administrator to adopt rules and regulations"; that "pursuant to the power conferred on him, the General Supplies Administrator issued on September 8, 1942, Administrative Order No. 8," and that "the power to issue rules and regulations is delegated in order that the law may be implemented and rendered more practicable." We also said that "in stating in his Administrative Order No. 8 the prohibition against the refusal by a merchant to sell goods kept by the latter in stock unless other goods are purchased which the buyer does not want or need, the Administrator did nothing else than implement Act No. 228, as amended, in order to carry out the aims and purposes of the statute." Similar statements can be made by us regarding that part of Order No. 8, as enlarged in 1946, which prohibits and punishes the selling without an invoice, when the latter is requested by the buyer-consumer. (In this case the evidence showed that the boy who bought the 2 pounds of rice acquired them for his uncle and foster father, in whose house he lived. The child therefore was not only the buyer of the rice, but also one of the consumers thereof.)

█ It is also urged by the defendant that Orders Nos. 8 and 84 "are null and void, inasmuch as they do not set forth a factual determination which would justify its promulgation, the defendant having been thus deprived of a due process of law."

An examination of Act No. 228 of May 12, 1942 (Laws of 1942, p. 1268), as amended by Act No. 493 of April 29, 1946 (Laws of 1946, p. 1474), readily discloses that under § § 2(c), 3(a) and (c), the General Supplies Administrator is expressly authorized to issue such regulations and orders as he might deem necessary to enforce its provisions. When authorizing him, under § 3(a), to issue such regulations and orders, the Act clearly and definitely provides that "all regulations or orders issued in consideration of the foregoing provisions *of this paragraph* shall be accompanied by a statement giving the considerations involved in its issuance." (Italics ours.) Subdivision (a) of § 3 authorizes the Administrator "by regulations or orders to establish such maximum prices or maximum profits as in his judgment are generally fair and equitable and will effectuate the purposes of this Act." However, in this case there is not involved a violation of a regulation or order of the Administrator fixing maximum prices to certain products, but there is unquestionably involved an order issued pursuant to § 3(c) of the Act. We say this, despite the fact that in the orders themselves it is stated that they have been issued "by virtue of the power granted by subdivision (d) of § 3." This does not alter in any way the conclusion which we have reached. According to subdivision (e) of said Section "the orders, rules, and regulations prescribed hereunder may contain all such provisions as the Administrator may deem necessary in order to prevent the evasion thereof." Whether there be involved an order issued under subdivision (c) or subdivision (d) of § 3 of Act No. 228 (we say this assuming that under subdivision (d) the Administrator might issue regulations or orders), the real fact is that only under § 3(a) is it required

that "all regulations or orders issued" establishing maximum prices or profits shall be "accompanied by a statement giving the considerations involved in its issuance." If in empowering the Supplies Administrator to promulgate regulations or orders like the one involved herein, the Act had required "a statement giving the considerations involved in its issuance," there is no doubt that the defendant would be right. See *Wichita R.R.* v. *Pub. Util. Comm.,* 260 U. S. 48, 58; *Mahler* v. *Eby,* 264 U. S. 32, 45, and *Panamá Refining Co.* v. *Ryan,* 293 U. S. 388, 432. Nevertheless, we repeat, a determination of facts was not necessary for the issuance of the order under discussion. The foregoing has been stated notwithstanding the fact that we think that Order No. 8 expressly contains "a statement giving the considerations involved in its issuance," inasmuch as it is set forth in the first paragraph thereof that "The General Supplies Administrator of Puerto Rico hereby determines that a number of speculative and manipulative practices exist in our insular commerce which, in his judgment, are equivalent or lead to unjustifiable price increases and which are inconsistent with the purposes of Act No. 228, of May 12, 1942."

▮▮ The sixth assignment likewise lacks merit, it being to the effect that the lower court "erred in finding the defendant guilty of a violation of the orders of the General Supplies Administrator, which are null and void because they have been promulgated by delegation and are *ex post facto.*" We have already stated that Act No. 228 of 1942, as amended, expressly empowers the Supplies Administrator to approve regulations and orders. We have also stated that such a delegation of authority is constitutional. The information alleges that Santos Altieri, on or about July 31, 1946, sold to Gregorio Rodríguez Vargas 2 pounds of rice, and that he refused to give the latter an invoice of such sale, upon demand being made therefor. The offense was therefore committed on July 31, 1946. Since Order No. 8 was issued on September 8, 1942, it can not be maintained that,

in so far as the defendant is concerned, said order is *ex post facto*. The fact that Order No. 8 was enlarged on July 30, 1946, does not render it *ex post facto* either, since the subsequent order took effect immediately and its publication began on said day. Section 3(*a*) which requires "that said regulations or orders shall be published by the Administrator in one or more newspaper of general circulation in the Island during three (3) consecutive days," refers exclusively to rules issued pursuant to § 3(*a*) which we have already mentioned and which empowers the Administrator to fix maximum prices and profits. There is nothing in the Act which requires that all other regulations or orders issued in harmony therewith shall be published for a certain period of time before becoming effective.

■ We fail to see how it could reasonably be maintained that the offense, according to the information, had prescribed. The information alleges that the offense was committed on July 31, 1946, and it was filed on August 7 of that same year. "The prosecution for any misdemeanor must be commenced within 1 year after its commission . . ." (Section 79 of the Penal Code.) And in the case at bar the information, as we have already indicated, was filed seven days after the commission of the offense.

■ The last error assigned is to the effect that the District Court of Aguadilla erred in imposing on the defendant the penalty—claimed to be excessive—of one year in jail and a fine of $1,000. The error is nonexistent. Administrative Orders Nos. 8 and 84 provide that the violation of any of their provisions shall be punished for each offense with a fine of not more than $5,000 and imprisonment in jail for not less than 3 months nor more than 2 years. Nevertheless, as there does not appear from the record anything to justify the severe penalty imposed, and taking into consideration that the defendant herein is a retailer on a small scale, who does not know how to read or write, the judgment appealed

from will be modified so as to impose only 3 months in jail and a fine of $100, plus costs, and as thus modified, the judgment is affirmed.